IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JEFFREY MACE BARCLAY,

    Petitioner,                     No. CIV S-01-1596 LKK GGH P

    vs.

ANA M. RAMIREZ-PALMER, et al.,

    Respondent.                 FINDINGS AND RECOMMENDATIONS

_____/

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 1999 conviction for two counts of first degree robbery (Cal. Penal Code § 211) with an enhancement for personal firearm use (Cal. Penal Code § 12022.5). Petitioner is serving a sentence of eight years, four months.

        Petitioner challenges his conviction on one ground: ineffective assistance of counsel. After carefully reviewing the record, the court recommends that the petition be denied.

<u>Anti-Terrorism and Effective Death Penalty Act (AEDPA)</u>

        The Antiterrorism and Effective Death Penalty Act (AEDPA) applies to this petition for habeas corpus which was filed after the AEDPA became effective. <u>Neelley v. Nagle</u>, 138 F.3d 917 (11th Cir.), citing <u>Lindh v. Murphy</u>, 117 S. Ct. 2059 (1997). The AEDPA "worked substantial changes to the law of habeas corpus," establishing more deferential

standards of review to be used by a federal habeas court in assessing a state court's adjudication of a criminal defendant's claims of constitutional error. Moore v. Calderon, 108 F.3d 261, 263 (9th Cir. 1997).

In Williams (Terry) v. Taylor, 529 U.S. 362, 120 S. Ct. 1495 (2000), the Supreme Court defined the operative review standard set forth in § 2254(d). Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 1519. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law, or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is, the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Williams (Terry), 529 U.S. at 407-08, 120 S. Ct. at 1520-1521 (2000). It is this prong of the AEDPA standard of review which directs deference to be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams (Terry), 529 U.S. at 410-11, 120 S. Ct. at 1522 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19, 123 S. Ct. 357 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early v. Packer, 537 U.S. 3, 123 S.

Ct. 362 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76, 123 S. Ct. 1166, 1175 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9, 123 S. Ct. at 366.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

Discussion

*Standards for Ineffective Assistance of Counsel*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Strickland, 466 U.S. at 688, 104 S. Ct. at 2065. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690, 104 S. Ct. at 2066. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id., 104 S. Ct. at 2066. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland at 466 U.S. at 689, 104 S. Ct. at 2065).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693, 104 S. Ct. at 2067. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694, 104 S. Ct. at 2068. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id., 104 S. Ct. at 2068.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor, 529 U.S. 362, 391-93, 120 S. Ct. 1495, 1512-13 (2000), (citing Lockhart v. Fretwell, 113 S. Ct. 838, 506 U.S. 364 (1993)).

The Supreme Court has recently emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411, 65 S. Ct. 363. Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-699, 122 S. Ct. 1843, 1852 (2002).

*Analysis*

On August 17, 1999, petitioner pled guilty to the two robbery counts and admitted the firearm use allegation. Respondent's Appendix I, p. 2. At the change of plea hearing, the court advised petitioner that pursuant to the plea agreement, he would receive a sentence of

4

between six and ten years in state prison. Id., p. 2.

Petitioner alleges that prior to sentencing, his counsel told him that if evidence could be presented as to why petitioner used the gun he might be able to qualify petitioner as a first time offender, entitling petitioner to a jail sentence and probation. Petitioner claims that he used the gun during the robberies due to a mental illness stemming from complications from diabetes. Petitioner claims that had his counsel investigated this mental defense, he would not have been sentenced to state prison.

Respondent argues that to the extent petitioner is alleging ineffective assistance of counsel based on counsel's representation prior to the time he pled guilty, such claims are waived. Tollett v. Henderson, 411 U.S. 258, 266-67, 93 S. Ct. 1602 (1973) (a guilty plea erases claims of constitutional violations arising before the plea; a defendant is then limited to attacking the voluntary and intelligent nature of plea itself). The petition does not raise any pre-plea claims. Rather, petitioner is challenging counsel's conduct post-plea, i.e .his failure to investigate petitioner's mental defense prior to sentencing.

Thus, petitioner, who also affirmatively avers that he is not challenging the plea agreement, see Traverse at 1, must show that his counsel acted incompetently at sentencing, and that the mistakes made undermines the court's confidence that the sentence imposed would have been imposed but for the mistakes. Petitioner in no way establishes that the sentence would have been any different for any reason, i.e., petitioner was not prejudiced.

From the letters by petitioner to his counsel, which petitioner has placed in the record, petitioner believed (erroneously) that his medical conditions and/or voluntary intoxication may have explained, or mitigated, his use of a gun during the robberies. Of course, his letters, at least in part, establish possible grounds for aggravation and not mitigation. In his letter of 8/20/99 (attached as one of multiple exhibits to the June 27, 2003 filing) petitioner's "clouded view" at the time of the robbery had indicated that guns were always used in robberies (and so therefore he should do no different), and the fact that in the military, petitioner was a "small arms

expert" which "made a gun, I thought, the only choice." Even considering petitioner's diabetic and or mental condition, the court's confidence that counsel could have obtained any lesser sentence is not bolstered by such evidence.

The fact of the matter is that at the change of plea hearing, the court specifically advised petitioner that pursuant to the plea agreement, he was going to sentence petitioner "someplace between six years and ten years in prison." Respondent's Appendix I, p. 3. Because the plea agreement did not provide for a sentence of less than state prison, petitioner was not prejudiced by counsel's failure to investigate a mental defense that may have supported a sentence of county jail or probation.[1] Nor could petitioner have qualified for any type of probation sentence (the only way he could have received a County Jail sentence)—he was statutorily ineligible for probation for having used a firearm in a crime. Cal. Penal Code § 1203.06.

From what can be pieced together of the post-sentencing records, petitioner's counsel made a request to have petitioner transported to court for sentence reconsideration because counsel believed that the judge had privately told them at change of plea that he would sentence at the lowest end of the 6 to 10 year potential sentence. (Declaration and Order for Transport filed on or about September 22, 1999). Apparently, this was the extent of counsel's "motion," as no other pleading has been found regarding this requested order. By annotation at the bottom of counsel's copy of the Declaration and Order, the judge refused to sign the order.

Then petitioner himself made a motion for modification of sentence attaching all his medical evidence (and the aforementioned letter) which was scheduled for June 6, 2000.
\\\\\

---

[1] At the change of plea hearing, petitioner told the court that he understood that he faced a prison sentence of six to ten years. Respondent's Appendix I, p. 3. Solemn declarations in open court carry a strong presumption of verity. Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621 (1977). A claim by petitioner that he did not understand the plea agreement would be undermined by his statement to the court that he understood the sentence he faced.

This motion was formally denied by the sentencing judge on August 14, 2000.  Respondent's Appendix C.

Thus, despite the plea agreement and the plea colloquy where petitioner clearly indicated to the judge that he knew he would be sentenced anywhere from 6-10 years; despite the statutory ineligibility for the type of sentence petitioner is now seeking; despite the sentencing judge's refusal to reconsider the eight year sentence when asked to do so by counsel (if even to delete only two years off the sentence); despite the trial judge's denial of petitioner's formal motion for reconsideration, petitioner believes that if only his counsel had supplied the medical information at sentencing, the sentencing outcome would have been different.  The undersigned's confidence in petitioner's sentencing in terms of whether it would have been what it actually turned out to be is not undermined.  There need be no evidentiary hearing—the record is sufficient.

The denial of the ineffective assistance of counsel claim by the California Supreme Court was neither contrary to nor an unreasonable application of clearly established Supreme Court authority.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised

\\\\\

\\\\\

\\\\\

1 that failure to file objections within the specified time may waive the right to appeal the District

2 Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3 DATED:  9/14/05

/s/ Gregory G. Hollows

GREGORY G. HOLLOWS
UNITED STATES MAGISTRATE JUDGE

ggh:kj
barclay.157